2. Yeah. Good morning. Mr. Cobb. And you can step up. Okay. Okay. Okay. Morning runners. Mike Coughlin representing Jim Steiner appellant. Um, our brief raises six issues. I'd like to start with two. They're the most serious one of the Brady violation. There were three significant Brady violations. Her eighth grade police statement of vaginal penile and mouth sex on minor was withheld right pre trial. It only came up after trial. The serious Brady violation was her college age psych report was withheld. Dr Shanker said she was in desperate need of psychiatric treatment and her complaints were all in her head. That was withheld. And the third one was her medical records showing that there was no sex during the time that she eventually alleged that sex had occurred from kindergarten. When you say, um, that the psych report, did it say her complaints regarding sexual assault were all in her head? Yes, your honor. The quote is psychogenic, not physical. He says that any further physical would be fruitless. It was the state in possession. When I say the state, I'm not talking about the victim or her family, the state's attorney in possession of those reports. I don't know. But while you your obligation to show Brady violations to prove that they were in possession of the state, were they? Uh, I say that that information was in the possession of the state. What you say and what the evidence is, was there evidence offered that that psych report was in possession of the state? There were two. It was, it's in your file, but I was not allowed a copy of it. There are 217 reports that I got to take a look at. This was one of those reports, but I wasn't able to make a copy of it. Question is, was in possession of the state. The mother was present when Dr Shanker made that psych report and Dr Shanker specifically wrote in the report, which your honor has in the file that both the mother and the daughter have problems. Okay. Strickler versus green. I'm sure you're familiar with the correct state is responsible for information could be exculpatory teaching that's in possession of the state, which is the state's attorney's office. The police are prosecutors. Was there evidence showing that? Do you have evidence showing? Yes, there is. What is the evidence? There is a pattern of withholding evidence on the part of the prosecutor, assistant state's attorney and Schweitzer. She specifically withheld the doctor. The the one the police report and she had extensive conversations directly with the mom who was present at the Shanker report. That evidence is sufficient circumstantial to show that the mom told her that the psychologist said that it's in her head and it's not that based on your inference, or is that it was actually testimony that the prosecutors were told that the I don't know. It's not in the evidence respectfully, your honor. It's in the emails which are in the record between the mom and the assistant state's attorney not going through the daughter. And it's in the Shanker report, which is number 1 22 of the medical reports. If you combine those two items of evidence, I believe it's very strong circumstantial evidence that it was in the possession of assistant state's attorney Schweitzer, especially when her pattern of blocking the access to the police report, which ultimately shows a false statement. Her false statement being the reason Lauren didn't disclose all this information over a 16 year period is because she didn't know it was wrong. She had what you call an emerging awareness. This always report withheld by the prosecutor clearly shows a lie. It is a blatant lie. They got caught red handed. Had they turned over that report, it would have shown that six years earlier, Lauren knew exactly how to report a minor sex offense because she did. And she picked the guy out of the lineup and he got arrested. His name is John Creel. I give you the citation. Let me ask. Go ahead. I'd like to ask about the argument that you made that the defendant's due process rights were violated when there was over a 60 month delay between the occurrence of the incidents of the last Did the trial court make the appropriate findings in this case with regard to that argument that was made below under Lawson? My other loss in the record shows that the trial court did not follow that loss into prompt test of making those findings. But now was there were there any prerequisites? Was there a pretrial motion filed to dismiss the bill of indictment pursuant to the statute as required? No, there was a request for a bill of particulars, which was not answered. No, no, I'm not talking about a bill of particulars. I'm talking about a motion to dismiss the bill of indictment for the reason you articulated, which we also alleged ineffective assistance of counsel. But the point is, if this wasn't filed, is that argument waived respectfully around? I think it goes to the fundamental right of a fair trial, and it is therefore not waived. What was their plan? Was did you argue plain error? Then I filed a motion in a trial court for dismissal based upon the delays. Plural post trial motion. Correct. Did you file any motions prior to that motion? Eliminate? I was not the trial attorney. The trial attorney filed a motion. Eliminate relating to the 60 day. Not to my recollection. So if you didn't file a motion in Lemonade, didn't give the state the opportunity to address that of the court opportunity to address it, didn't wait. You waited until post trial motion. The question, Justice, you know, fast. You is that waived? And you said, if it's waived, it's air. Did you argue plain error here at the trial at the public court? Are you playing? If I'm understanding the question, are you playing error in terms of ineffective assistance of counsel and not being waived or the you know, either you wait, if you waive an issue and and you want to overcome that waiver, you have to say it was plain error. Correct. That's a way of getting around the waiver at this at the appellate court. And did you do that? I don't call arguing plain error. I do recall setting forth the argument that it's a fundamental right. You say, you know, even constitutional issues can be waived. 114-1, which is motions to dismiss as any claim, any basis for motion to dismiss, not made in a pretrial motion is waived. So the question is, should waiver should we forgive the waiver and consider this for plain error because of the ineffective your claim of ineffective assistance of counsel? Yes, please. But you didn't. And I think Justice Sinow's point was, you didn't make that argument in your briefs. You do argue ineffective assistance, but not with respect to the failure to file the motion to dismiss. You understand the point? So is it waived? And if it is waived, why should we consider it in the context of all these facts? It's a 16 year delay. And when you take a look at Gully and Lawson, which are the delay cases, those are far less than 16. Plus, when you combine it with the lack of answer to the bill of particulars, not only does he have 16 years to say, What was I doing 16 years ago? But he doesn't know that Dainsey's charged. The problem is that in all the cases that you cited in your brief, every single one of them, there was a pretrial motion to dismiss. So the waiver issue was not considered, but where it wasn't raising post trial motion, but it was preserved in a pretrial motion. It's been considered for plain error. Why is plain error here? The combination respectively of a 16 year delay and the seven findings of Judge Inglesmire starting on page 4 37 record 4 37. No physical evidence. Well, do you need physical evidence in this instance? Yes. Under what U. S. Uh, independent corroboration. Wait a minute. That that is no longer the case. Why is it? Uh, it's I took a look at. First of all, Laura is from is a 2012 case. So that is the law to my observations. And it is also affirmed by 2014 case, which is third district, which is called Hurry H. R. Y. And it's these types of cases where they get charged with a series of predatory criminal sexual assault events. So in Laura and hurry and sergeant, there were multiple counts. Uh, and, um, Laura is still good law. Well, are there any jury instructions in the state of Illinois that require jurors to judge the credibility of victim of a sex offense differently than they judge the credibility of any other witness? I would say no. Credibility is credibility. Credibility is credibility. But you're putting you're putting the burden on the victim for clear and convincing evidence versus the sufficiency of the evidence by saying you have to have something corroborating a sex offense. That is not the law in this state. I agree with your honor's statement because Laura and hurry are defendant confession cases, whereas this Steiner case is clearly distinguishable where there is a defendant confession. I'm sorry, where respectfully, I do understand and agree with the court. You need corroboration. You can't just use a defendant's confession. That's different than saying in a sex case. You need corroboration in addition to the testimony of victim understood and agreed in this instance, though, where we have these specific findings, the police should have gotten out of their evidence. They need to do more investigation because otherwise it sticks the trial judge with a difficult decision. Hey, what's the evidence? And in fact, Judge Engels must specifically stated, you know, there were some questions that should have been asked here that weren't asked. But he also said that afterwards and hearing the post trial motion that even if this additional evidence had been adduced that he wouldn't have changed his decision in the case understood. And one of the bases of the appeal is that jangles my head predetermined the outcome of the case. Judge Angus was specifically took 217 medical pages of medical records, removed them from the court file, removed them from the college courthouse, removed them from the county and didn't bring those records back until Judge Marker ordered that he returned those records. There's letters in the courts. What does that have to do with because it shows that his his determination of guilt was predetermined by the fact that he took the records, the medical records isn't your argument that he made a comment about the final witness, but he did allow closing argument. When he was hearing the post trial motion, he made a comment with respect to the credibility and the last witness. And you're trying to argue that because he made this because he made this statement regarding the last witness that he'd already made up his mind before he heard the last witness. Correct. Taken in context with the rest of the record. Okay. But he heard the last witness. He allowed closing argument. He made no comment during the trial with respect to how he felt the trial should come out. Did he? My understanding is consistent with your honor just said. Okay. So how is how is this significant? The cases that I say say that the defendant is deprived of a Sixth Amendment right if a judge makes a guilty determination prior to closing argument. But you're assuming that he did that just from what I've summarized and you've argued. Is that correct? I am not assuming I am taking a literal interpretation of his quote, which I put directly in the brief. He said that he had not made up his mind until the end of the last witness. Well, until the end of the last witness, closing argument is not evidence, is it? Council agreed, right? It's not evidence. It's a summary of the evidence. It's the party's argument of how they would like the finder of fact to view the evidence. Correct? Yes. But the case law says if you make up your mind before closing argument, it's a go ahead. Um, the totality of the record appears to show that Judge Angleswell made up his mind. There's a lot of pressure on trial court judges to convict when somebody's charged with predatory criminal sexual assault, which is why it's very helpful that we have an appellate court when they take it away from the locals. The locals are afraid to not convict because they're going to be accused of being this. Where are you getting evidence based on? I'm sorry. Is that just your impression? It's the evidence in the record. The evidence in the record is that the public puts pressure on trial for judges define defendants guilty in sex cases. Yes. Where's that? There are 22 press releases where new state's attorney over zealous state's attorney Michelle courier compliments Judge on the first line of 22 press releases. Every time there's a conviction, she never does it when it's a not guilty. He had just run for office. She had just beat Jim Steiner's opponent, who was the former state's attorney. And the campaign rally was that Jim Hirsch prior state's attorney was plea bargaining and therefore predatory sex offense cases that she would never plead. Why did they file a substitution of judge from this guy? If that's the way, if that's the evidence that was out there, why didn't they file it? Because the oh nine indictments were defective, which judge angles eventually confirmed. They knew that judge angles. I'm gonna give you a little bit more time and I'll give you more time as well. There's so many issues in this case that we have the time. So let's take it. But if I could just indicate, I think counsel, you need to be very careful about what you're saying because what you have just said impugns the integrity of Judge Engelsman and the judiciary and to to insinuate that the judiciary panders to political considerations is really something very serious. And unless you have hard evidence that a judge would do that, I think you better be very careful about what you say and what you certainly say on the record. Understood. Your honor, I practiced law for 32 years. I have never had a 1 37 or an A. R. D. C. Complaint. I thoroughly research and investigate the facts and I know what's in the record. Let's go to ineffective assistance just briefly because you did raise ineffective assistance. And of course, under strictly, you know, we need the two prompts. Uh, the representation fell below an objective standard reasonableness and and the second one. And there is a reasonable probability that but for council's errors, the outcome would have been different. As Justice Zinoff cited in the record, the judge said, regardless of all of this new evidence, basically, I would have reached the same conclusion. I would have ruled the same. Doesn't that get rid of the second prong of Strickland? Uh, his statement addresses the second prong of Strickland, but the evidence doesn't support the judge's finding. So what's our standard of review there? The standard is what your honor said from my observations are reading in the law. But to to picture it concretely, the trial attorney, Jim Hirsch, ineffective, had had two choices. He can show up for one day with one book and make a technical argument and have the charges dismissed, not understanding that they're going to be refiled or superseded with a brand new grand jury, which is exactly what happened. Or he can prepare an actual case because he's alleged to the client is less would have committed 500 class X offenses. This case took about as long to try as a speeding ticket. Doesn't doesn't that trial strategy, though? No, not at all. And the case law bears it out. When you make a mistake of law, it's ineffective assistance of counsel, his mistake of law. And he puts us right on the record. I think I put it in brief that he that his plan was to have it dismissed after jeopardy set in. And on, uh, December 27, 2011, uh, the state's attorney's office was deciding whether or not to amend or get a superseding in giant indictment. You've got two indictments. You've got the class of 09 who delivered the first indictment and three years later, the substance of the defective charges never changed. The substance was always the same, correct? Disagree. Was that just a typographical error in terms of the incorrect citations? The conduct, the conduct alleged was identical. I looked at the complaints that are the indictments. They were identical, but the caption was different in the citation. The statute was different, correct? The name, the section number. But when you're dealing with sex offenses, there are so many sex offenses under that section. If you interchange the word abuse for assault, you've gone from a class to probationable to six mandatory consecutive access. The kind of alleged is what I'm asking you. So these defects were formal, correct? Uh, respectfully, they were substantive as borne out by the authority that excited because it was a new grand jury, 16 new people, new witness. So if the state to come in and said, Judge, there's a typo in the indictments. We want to amend the indictments that they could have done that. That did happen, but they didn't amend it. They chose to get a new indictment. I understand your point, but they could have done that. They should have done right, but they didn't do that. Well, they should have done that from a prosecutor's standpoint. The problem was noticed to the defendant. The defendant didn't have sufficient notice. The Constitution doesn't require him to have a question. It comes back to your same argument. You don't even have to get into formal or substantive. The mistake that Hirsch made was he thought that these were substantive defects. They were not. They were just formal and they could have been corrected at any time by the state. And he was made no sense to go to trial on that defense because it did not hold any water. I mean, that should be your argument, shouldn't it? Well, the argument is he shows up one day with one book, which is a technical dismissal, or he shows up for six days with 20 witnesses to defend 500 class X's, which is what he should have done. He didn't do that. He was ineffective. This client got sold down the river. Well, you mentioned these kinds of these arguments are kind of related. The due process pre indictment delay is kind of related. But at the end of the day, how is he gonna find the alibi witnesses anyway? Well, understood. If it's three years, four years, five years, eight years, I can answer specifically on the court record. During that period of time, his business partner, Bob Cassidy, was the guy that showed his house. His mother in law and father in law literally live next door, and they came into the house any time they wanted because there was a keypad on the garage door, and the sex was supposedly occurring three different aspects. Sex, vaginal, penile or oral oral all before breakfast with Nick and Tim were in the house when it was supposedly happening, and she never wants to complain over a 10 year period. This is an outrageous, unbelievable allegation. And the other thing is for the trial court to decide. Not for us. We don't decide credibility counseling. I do. And I understand. However, your honor, I've had trial judges tell me before. You know, you really got to bring this to the appellate court, meaning there's a lot of pressure on the local people when you get a charge like this. And I understand what your honor is saying to me that I need to watch what I'm saying. I'm a former elected states to me. I understand the system of, uh, well, you know, doesn't run for election. You know that he did run for election. He just finished his election. He was on a campaign trail with Michelle Currier. He has just finished and he lost. Yes, I've been included in your record is campaign finance materials. You know, you're really getting close if you haven't already crossed the line. Those accusations are very serious. They're very serious, and there's an innocent man sitting in Menard right now with 42 years against his that justify impugning the integrity of a sitting judge. I didn't do it, your honor. I got dealt this plate. I put every piece of paper in that record. I have three and have sitting in the audience. Three elected officials told me, Mike, you need to make this David. One of the elected officials was about to run for mayor is Jim Steiner. The guy's got no prior to an upstanding member. Rest assured, this record has been and will continue to be thoroughly reviewed until the disposition in this case is issue. So you don't have to make those accusations if you've made them. And I don't see that in your briefs. The accusations that you've made here. I didn't. I didn't see that in your six issues. It's a response because it's not evidence in this record. And so we're limited at the appellate court. We're kind of like you've been practicing for how many years? I don't think I need to tell you purview of the appellate court is so we're limited to what is in the record. So what's not in the record? Counsel, I would caution you not to argue. I am not arguing anything that's not in the record, and I only raised it in response to your question of the context of Judge Angles mom making a pre closing argument predetermination of guilt. There is evidence in this record that he has made predeterminations throughout, one of which is withholding out of the court file, which is his own words in his own letter on his own letterhead that's in there. A report that said that Lauren is in desperate need of regular psychiatric treatment. What page of the record is it? It's it's I don't think it's a number because it's sealed because they wouldn't give me a 22 out of the 217 pages that were withheld. And I can get that for you in a matter of minutes. But there are there's there's an order from Judge Marker, which specifically says, Hey, I just received 217 pages of medical records that came from Judge Angles mother were held outside of the court file outside of the courthouse when he got moved from County Winnebago and his letter says, and it's in the file, it says I was gonna return these after the case was over. That's highly probative evidence of the credibility of Lauren and Judge Engelsman said this whole case came down to the credibility of Lawrence. If that if it was on the record that she was in desperate need of psychiatric treatment right before she went and reported her dad on a 16 year delay report with zero physical evidence, that's determinative of the outcome that catches them lying. Let me get to another issue. One more issue and then we're gonna I'm gonna let you wrap up. Was your client required to withdraw his jury waiver? Not at all. The jury waiver occurred on the own nine indictment. There was no pending superseding indictment on which to have a jury waiver to withdraw. And here's what happened. Three days. He gets arraigned on January 27, 2012, the Friday before the Monday to start a trial. If you look at that in Section 106-3, it says there must be an understanding waiver in open court. That's a requirement. It's also constitutional. That didn't happen. If you read that transcript zone about three pages, five pages, there is no reference to jury waiver whatsoever. So that's violative of that statute. Any other questions? That's for camp. Thank you so much. You have an opportunity for rebuttal. Morning Council. Good morning. Honors Council. Um, may it please the court on behalf of the people? Um, your honors, unless this court is specific questions, the people will not address issues that were not contained in the brief or in the record. Uh, other than this briefly say that there's certainly no evidence in the record that either judge and small or the state's attorney did anything improper in this case that they were railroading anyone on. And let's talk about where we left off with counsel. Um, the defense counsel spoke to his client after the second indictment and waived reading of the indictment. Correct? Correct. At that point, um, was there a requirement for his client to withdraw the jury waiver? Or was there still a legitimate jury waiver? There were still different from Hernandez. The issue is if there's a formal versus a substantive change that is not only material, it's determinative. I don't know why the state's attorney went and got a new indictment. It wasn't necessary. The charges, as Justice Burkett has suggested, the charges themselves, the wording was identical from the original complaint through the second indictment, much less the third indictment. The wording didn't change. The only thing that changed the name of the offense and the statutory citation. So it wasn't a superseding. It wasn't a superseding indictment. Contrary to calling it that why they went and got a second grand jury. I don't know. It wasn't necessary. It was formal. The judge had given leave to the people to amend the indictment. That was done. So I believe in open court counsel over the people's objection was given an opportunity to get a continuance of a month or two to research and establish whether or not the issue that he said you've stolen my thunder. I was going to raise that after whether or not that would have any impact. And the judge specifically said, well, any defect is formal in nature. It wouldn't change. I would have found that the defendant was aware of the charges. So at no point in time did anything change. Defendant was aware of the exact nature of the charges, was aware exactly what he was being charged with, which is the exact definition of a formal as opposed to a substantive defect. Now, was he required to file a pretrial motion to dismiss that bill of indictment in order to in the due process violation? In order for the court to address that? Yes. Why did you? Excuse me. If if he ended up, I mean, if he filed a post trial motion, isn't that sufficient to allege the problem with the indictment delay length of time? That's correct. Well, the people haven't found a single case. I mean, the pre indictment delay cases all address the circumstance once the people know an offense has been committed. I mean, in essence, what the defense is doing, they're conflating the concern with delayed reporting versus pre indictment delay. There was, I mean, there was no pre indictment delay. Right. But you mentioned that the time from which this is measured is not when the state finds out. It's the date of the occurrence of the offense to the date of the indictment. So it's not when the state finds out. It's actually the people's position that it is from when the state finds out there, there is, there is what the case, what case says that? Well, I think it's the opposite. I don't think there's a single case that says the opposite. I don't think there's a case that specifically because it doesn't come up. Well, what's the rationale behind pre indictment delay? The rationale behind it is prejudice to the defendant. So, and even in the circumstance, and we do cite in our brief pretty extensively, even assuming for argument's sake, uh, there, there is a concern. There was a pre indictment delay, which we do not believe there was. The question is prejudice. Defendant in order to trigger a loss in analysis has to come up with specific prejudice. We cited an analyzed case after case where the court's found. You can't just say, well, I was prejudiced. Why? Well, I couldn't come up with an alibi witness. You have to show actually. Now, let me go back to what Justice Sienoff was asking. There is not that I could find a single case where an appellate court or the Supreme Court is considered, um, a pre indictment delay where there hasn't been a motion to dismiss file prior to trial. Correct. Why didn't you argue waiver in your in your brief? Didn't think of it. I wish I had did nothing. Doesn't Lawson say that any grounds Lawson says you have to comply with the statute. Statutory requirements are important. Correct. We get 114-1 says any ground not raised in a motion to dismiss file prior to trial in a timely fashion are waived. Why didn't you waiver? Again, Your Honor, I wish I could waive that now. Waive waiver. I don't think so. Uh, but again, I wish I had a better. I mean, I could rarely say that I didn't exhaust the people's arguments, but simply did not think of it. It is the boat. If you want to say, Yeah, I mean, I address. I'm sorry. Did you miss the boat? Or did you feel because it was raised in a post trial motion that it was preserved? And that's why you didn't argue? No, I didn't feel it was preserved. I did. I literally didn't think of the waiver argument. And more importantly, or as importantly, I think we very adequately addressed the concern that that this pre indictment waiver isn't even triggered until the people know number one and number two. As I said, defendant could have and even in the reply brief did not point out, despite our argument that there was a general prejudice, which again, you need a specific trigger. Defendant didn't say what specific alibi witness, what document, what was not available to him as a result of the delayed reporting. And again, I would argue delayed reporting, not pre indictment delay. Totally separate issue. And I do think that the defense conflates those two concerns. Well, the Supreme Court said in Lawson, you do look at the entire delay from the time of the offense until the time of charge. So to be fair, you do look at the entire, that entire time frame to measure whether or not there's been a showing of actual prejudice. For example, this person, and I think I forget the name of the case, my alibi witness died or my self defense witness died. That would be a showing of actual prejudice. Yes, potentially. If you can, if you can come up with a very specific example, we've also cited cases where there were a 10 to 12 year delay before the people became aware. And in those cases, the court found that that was not one. The delay wasn't problematic. And to again, without that specific finding that there was a lost witness or a lost benefit or prejudice. As in Gully, there was two FBI agents conflicting reports with respect to the description of the offender and the witness who would have provided a potential and fattening defense had died. Well, Gully was not any much shorter in time frame. But more importantly, Gully was an ongoing investigation. So again, the people were aware because there was an undercover operation being conducted. It was it was a pre indictment delay. The people didn't bring the case against Gully because they were trying to grab a bigger bag, a fish, throw a bigger net as opposed to one of the cases we cited where an individual came forward with evidence that her ex husband had committed or admitted to her a murder years before. And in that case, the discussion was the people weren't aware. So the time really wasn't triggered until the people became aware. So again, we're kind of looking at Gully was an actual pre indictment delay case. And in each of the circumstances where the court found that defendant had demonstrated prejudice was either a case where the people were aware of and it is in Gully didn't indict for whatever reason and then lost a crucial witness that evidence showed could have demonstrated that it was someone else or the case where there was an individual that that left to Florida and the people just dropped the case and then reinstated it when he returned. So in each of those cases, it was action of the people that caused the delay. There is some dicta, there's some brief reference to the overall delay and we could not find a single case where the but even more important, defendant has the burden of coming across with that requisite finding of prejudice, not just general. Well, there were so many charges, we didn't know exactly what we could have shown. Therefore, we could have come up with more alibi witnesses. There's no evidence that any alibi witness would have been any more specific or come across with anything that was not duplicative of the two alibi witnesses that were indeed introduced by the defense of trial. I'm sorry, the defendant had a full opportunity to present his argument to make a demonstration of actual prejudice during the post trial motion. Correct. And again, everything was just a generic. Well, there's more photos, there are pictures, there are other things we could have shown. Uh, the trial judge analyzed everything and said, uh, one and let me make it clear, the judge said a lot of this wouldn't have come in during trial. It wasn't appropriate. I'm accepting a lot more in post trial to cross the T's to dot the I's to make sure that in this circumstance I'm giving the defendant the benefit because possibly again, don't know for sure, but possibly because of the delayed reporting, show me everything that you have. And the trial judge then said, considering all that, you have not demonstrated prejudice. You have not shown me anything that would have changed the outcome and specifically said I was sitting as prior effect. So I can very specifically say that. No, let's talk about the psychiatric report of victim, right? The Brady violation, the brain violation, the psychiatric, uh, psychiatric report of the victim. How do you respond to counsel's argument? As far as I know, I don't know that the record demonstrates that it was in possession of the people. I didn't argue in the brief. I don't specifically know exactly what he's talking about. I did not see that report. I have not viewed that report. I don't know other than council's representation exactly what the report contains. Um, the judge, the 2003 police report, 2003 police report is not a Brady violation. You cannot impute knowledge to the people of everything and anything in a complaining witness, a defendant, any witnesses. Was there a statement she made in that 2003 police report? She did make news to impeach her. Arguably, it could have been used if the people were aware of it. As far as we're where the people weren't even aware of it. It was a different jurisdiction. Uh, defendant would have been just would have been more likely to have known that it existed and brought it up to his attorney material. It also wasn't material because at most, contrary to what defendant is now suggesting the statement, the paraphrase statement by the police officer does not say that the complaining witness knew that that type of conduct was a crime. There was not a statement by the victim. It was it was not written by her. It was not. It was not signed. It was not signed by. How would that be used to impeach? I don't know that it could have, but even if it had been introduced and was allowed, the impeachment would have been minimal. It wasn't inconsistent with anything that the complaining witness had said. At best, it would have been a minor inconsistency frame anyway that she doesn't fit in the time frame until she was in 7th or 8th grade or whatever. The charges only went through 2000. This occurred in 2003. Uh, the defendant, the defendant, I'm sorry, the complaining witness did testify that right around that time frame. And again, I pointed on the brief. It was there was a minor inconsistency, whether it was 7th or 8th grade, but clearly right around 2003 was when the complaining witness testified that she was becoming aware or and it stopped the conduct. Secondly, conduct that had been ongoing since the time she was a small child with a parent is not consistent or the same with a friend of stranger. All we have at most from that statement is the guy, the stranger said, Well, there might be a problem because of your age. We don't know if that stranger was a 17 year old guy with a 13 year old girl. We don't know if it was a 30 year old individual. But again, to the extent that it is not inconsistent with complaining witnesses testimony, it's also not consistent with the argument that the prosecutor makes. And I raise that because I raise that because the defendant also argues that that would have somehow impugned the argument the prosecution made, which was this conduct was so typical and so routine. Well, it was and that is consistent with the testimony. Uh, the complaining witness said all along, I really was my life. This is what happened. Uh, to the extent that defendant wants to again conflate the concern with a delayed reporting, that's really reasonable doubt. Defendant doesn't raise reasonable doubt. He goes around the edges. A lot of his concerns imply. Well, the evidence was so weak. People disagree. The evidence was very strong, wasn't overwhelming, but it was quite strong. You had a complaining witness, which the judge found very credible. You had the mom and the brother, which corroborated the complaining witness and whether you call it that or not, you had tacit admissions by the defendant. When the defendant was confronted by both the mother, his wife and the brother, his son. Why did you do this? He apologized, apologized for the conduct. He apologized for the impact would have. He said, I touched her. Uh, but he later denied that, correct? He later denied that. But that denial was at trial. The trial judge viewed that and said, I don't find those denials credible. So what is our? What is the standard of review here? Well, obviously one, you can only consider things inside the record. Uh, standard of review on a bench trial on a bench trial is, is well, reasonable doubt is reasonable doubt. Obviously, the source of discretion. Well, reasonable doubt isn't it? I mean, reasonable doubt is much stronger standard standard. Yes, of course. I mean, when we boil down to it and again, I think that's what really the defendant is asking. It's asking the court to reweigh the credibility, which this court simply cannot do. Some of the specific issues. Obviously, it's an abuse of discretion standard. Did the judge abuse his discretion in, uh, you know, the isolated remarks he made that the judge abuses discretion. So yes, there is abuse of discretion standard with some of the specific claims, but none of those specific claims are supported by the record. Well, the judge didn't make the comment that he, uh, Harvard, you know, still presumably defended innocent until the last witness. Correct. Or worse to that effect. What was I think? I think the exact language was and again understand post trial versus during trial. Significant difference. The courts in the cases we've cited specifically say the judge is entitled to explain his motion. Here's why I did this. I found that the testimony of the witnesses for the people were very credible. I found the testimony of the defendant was incredible. Does not mean in of itself that he didn't wait and that he pre judged anything. He also specifically stated that I considered all the evidence. I considered the argument. I've considered the arguments again at kill your affidavit from an attorney saying, Well, I found that counsel was ineffective. So he's clearly stated that he saw everything, reviewed everything, considered everything and that comments clearly in context. I think the defendant tries to say, Well, looking at the literal interpretation, we don't care. We have to look at all the comments in context. In context, it was clear that he was making a comment about his credibility findings. No more, no less. Is it any different in a bench trial than it would be a jury trial? Certainly. I mean, to you, well, I mean, some of the cases it obviously would have less impact on the finder of fact if the judge is making a comment in a jury trial during trial or if a juror says I've made up my mind before closing argument. Would that be any different than the judge saying I had nothing but the presumption of innocence going into this trial still did up until the final witness? Frankly, under the hypothetical again, I suppose if we have, uh, we actually review interview the jurors after a jury says a juror says, Yeah, I made up my mind on day one. That's a little different. I mean, well, again, I'm not sure exactly what context the juror would have said. But clearly here, yes, because the presumption is the judge does what he's supposed to do. It's a presumption of innocence, not a you're not supposed to be blinded towards making credibility determinations as the trial is progressing and looking at there's a presumption of innocence. There's also presumption of the judge does what he's supposed to do. And there certainly is nothing in this case from this brief comment post trial that suggests that just angles mud did anything but both of those moving on real briefly. I don't know. I don't move on real briefly to position of your opponent, where he is saying that you need other collaboration from a victim of a sex offense. Certainly that is not the law, Your Honor. I mean, I don't know what else to say. Sex crimes are the same as every other crime. The law that suggests otherwise has not been the law since, I believe, 1984. The evidence here was strong. There was corroboration again. You do not need medical or physical corroboration. There was corroboration. The corroboration was not only the mother and the brother, but again, the corroboration was defendants own statements. And to the extent that defendants saying, Well, wait a second, that's just how I handle. I was credibility determination of the trial judgment. Anything further? Council. Thank you very much. Thank you. Mr. Coggins, I want to direct you to those police reports. Council brought up the point. The police report that you allege that your client was tried the right to a fair trial based upon Brady violations. The police report wasn't written by her. I it really weren't her words. They were summarized in the report wasn't signed by her. You've been practicing for 30 some years. Tell me how you're going to get that into evidence. Sure. Lauren's up in a witness stand. And I say, Hey, you claim that you didn't know that sex between minor and adult was wrong, right? Right. And you report your dad in January of 2000 and nine. Is that correct? Yes. Is there anything that happened to you prior to January of 2000 and nine that shows that you might have known how to go to the police department, how to sit down, how to talk to an FBI agent, police officer, how to pick somebody out of a photo lineup, how I DM how to get arrested. And her answer is no. And then when she did, if she denies those, then I called Detective Ernest, who I had testify in a post trial hearing. And he says, Oh, sure. She was a natural. We arrested the guy. He went to Creel and it's in the report. He's 30 years old. So counsel in this state of those facts. I've got the report right here. She lied and she got caught. She says she did not know it was a crime and that's why she didn't report it. They hid this and they got caught. When you say they hid this, who is they? And Schweitzer was the same prosecutor on that prior case. Uh, no. Okay, because where's what happened? Both Schweitzer testified post trial and David Ernest, the detective testified post trial. They were both asked, was this police report accessible to you? Yes. On a rule 4 12 and Brady, they have to go look for this. Not only that, more than a mile. Wait a minute. That that report was from 2000. What year? 33. Okay. And how six years later are they supposed to remember that interview? The same officers who investigated both cases? Here's why today you're talking about a word search for witnesses in cases. Is that what that's exactly? That's why it's what you're testified to. Yes. A word search. She said she typed in 260. She's typed in Steiner. She came up with 265 and most were traffic. When was that done? The one with your testimony? What was the word? When was the word search? I don't recall her testimony, but it's in the record. It was great. I don't recall. Wasn't that important? Um, we're on the record, but you know, we're not. We keep asking these questions about the record. Where is this in the record? 30. Okay. You're talking about Schweitzer testifier. Right. Uh, I believe it's April 14th 2014. She hit the witness stand and I don't recall the exact. But David Ernest testifier, Detective Ernest testified post trial for September 26, 2014. And he testified well after the trial, but he testified to the event that this report was available at the beginning of this investigation. And your honors asked a real important question. I think I need to bring out of your boat Lawrence sitting there in 2000 and three. And you said, well, it wasn't 2000 36 years before she reported the dad. Yes, but that was right during the time that she was supposedly having forced vaginal intercourse every day. And if she were telling the truth, she would have said, help me help me as she reporting Creel in this report. I know how to report somebody. I know my and my dad had vaginal intercourse with me by force that morning is what she should have said if she weren't lying. You know, calm down. What you're arguing, you're arguing that mindset of the victim must be this. I am arguing that's what you're arguing that on this evidence she was required to report should have reported your flag. Is there a requirement that child sex abuse victims report? Generally, I don't know of a legal requirement, but in this instance, yes. I'll show you why. There's two Laurens, the healthy eighth grade Lauren and the sick college. How are the photographs of a child at any point in time in mixed company with others relevant to whether or not he or she was sexually abused because she gained £150 and she was on Lexapro and topo all according to her her dad. But when she was supposedly having vaginal forced intercourse and see 3347, she's riding horsey back on her dad with a non sexual contact with a very healthy and happy father daughter relationship. And I can explain why this came about. Go ahead. Okay, here's what all started. It started at our 2 42. And here's Lawrence testimony. Quote, My mother asked me some questions, but I was not, but I would not express exactly what it was or what happened. She would ask me, and I would say yes or no. So the mother is asking the child initially at the very first idea that this might have happened. This is a drugged child who's got brain involvement from Lyme disease is diagnosed by Dr. Uh, wrestling. And here's the key. If you take this in the context, I apologize for him on up. If you take this in the context of the legal proceedings, the mom works for a 30 years. He took four legal proceedings on top of the dad's head when she got caught having an affair with the dad's business partner, all of which is in the record. Bob Cassidy, by the way, who is his alibi witness because he comes their construction guys. They come in the morning and he picks him up the house and that would be the alibi. No, I'm not having vaginal intercourse with my second year second grader because I'm getting picked up part of the time of going to work. Wait, the guy who is his alibi witness was having sex with his wife. Exactly. Exactly. And it's unrebutted. And that's the key. If you take a look at his 26 page affidavit, this innocent individual took a 26 page affidavit and said, single spaced, go ahead and cross examining with the state cross examining once a month thing answer. No, he had the witness stand three times in the trial court. Ask me your questions. Ask me your questions. This evidence in your record stands unrebutted. And here's the key. When the mom asks a yes or no question, she knows that she's dealing with 150 pound heavier sick on drugs. Lauren, rather than let's ride horsey back when supposedly fourth vaginal penetration is occurring and oral both ways every three to three times a week from kindergarten to eighth grade. And nobody has a hint because brothers Nick and Tim are in the house at the same time in there in breakfast with 10 minutes later. It didn't happen. They made this up. What's the pages of the record? 2 42. Mr Cassidy's testimony. Um, Cassidy didn't testify. But Bob's affidavit, Tom Jim's affidavit was filed September of 2014 at a post trial. And and and it lays out. I thought you just said cross examined me and no one did with regard to Mr Cassidy. Nobody cross examined the defendant when the defendant said my wife was having an affair and her sister in law said that Terry admitted having an affair and got caught, which is what started this whole thing. Everything is fine. And here's how you know it is a four month period in the record. Kerry on September 11th 2008 is flopping around in the garage floor and quote hysterics. Fast forward four months. Dad gets her. I think you're going beyond the state's argument. This bottle. So address what the state? I'm going to give you an opportunity just to wrap up because so. So why was the mom recording during that four months period? And the answer was she went on a cruise with him and we've there's photos in the record. She goes to the birthday party. She has a family events, etcetera. If the mom truthfully believed that the dad would vaginally penetrated the door from kindergarten to eighth grade, she wouldn't have gone on cruise with him for the 25th anniversary. During that period of time, she wouldn't have delayed. She would have gone right to the police and reported it. But she didn't. What she did is she manipulated the police. She manipulated the legal system. She manipulated her daughter who was on drugs by asking her these leading questions. Thank you, counsel. Gentlemen, thank you so much for your arguments. Under consideration, a decision will be rendered in due course. We are